**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **THE OHIO NATIONAL LIFE INSURANCE** | : | |
| **COMPANY; and OHIO NATIONAL LIFE** | : | **Case No. _____** |
| **ASSURANCE CORP.** | : | |
| | : | **Judge _____** |
| | : | |
| | : | |
| **Plaintiffs,** | : | **Magistrate Judge _____** |
| | : | |
| **v.** | : | |
| | : | |
| **CETERA ADVISOR NETWORKS, LLC;** | : | |
| **FIRST ALLIED SECURITIES, INC.;** | : | |
| **CETERA INVESTMENT SERVICES LLC;** | : | |
| **CETERA ADVISORS LLC; SUMMIT** | : | |
| **BROKERAGE SERVICES, INC.;** | : | |
| **CETERA FINANCIAL SPECIALISTS LLC;** | : | |
| **OPPENHEIMER & CO., INC.; and** | : | |
| **OPPENHEIMER LIFE AGENCY, LTD.** | : | |
| | : | |
| **Defendants.** | : | |

**COMPLAINT FOR DECLARATORY AND
<u>INJUNCTIVE RELIEF</u>**

Plaintiffs The Ohio National Life Insurance Company ("ONLIC") and Ohio National

Life Assurance Corporation ("ONLAC") (collectively, "Plaintiffs"), for their Complaint against

Defendants Cetera Advisor Networks, LLC, First Allied Securities, Inc., Cetera Investment

Services, LLC, Cetera Advisors, LLC, Summit Brokerage Services, Inc., and Cetera Financial

Specialists LLC (collectively, the "Cetera Defendants"), and Oppenheimer & Co., Inc. and

Oppenheimer Life Agency, Ltd. (collectively, the "Oppenheimer Defendants") allege as follows:

**<u>THE PARTIES</u>**

1.     Plaintiff ONLIC and ONLAC are Ohio corporations, each with a principal place

of business in Cincinnati, Ohio.

2.      ONLIC and ONLAC are insurance companies that are not members of or registered with the Financial Industry Regulatory Authority or FINRA.  Among other things, these entities offer for sale various insurance-related products, including life insurance. Previously, ONLIC also offered and sold variable annuities.  Variable annuities are annuities that include assets maintained in securities sub-accounts.

3.      Upon information and belief, Defendant Cetera Advisor Networks, LLC ("CAN") is a Delaware limited liability company.  Further, upon information and belief, no member of CAN is a citizen of Ohio.

4.      Upon information and belief, Defendant First Allied Securities, Inc. ("FAS") is a New York corporation, which maintains its principal place of business in San Diego, California.

5.      Upon information and belief, Defendant Cetera Investment Services LLC ("CIS") is a Delaware limited liability company. Further, upon information and belief, no member of CIS is a citizen of Ohio.

6.      Upon information and belief, Defendant Cetera Advisors LLC ("CA") is a Delaware limited liability company. Further, upon information and belief, no member of CA is a citizen of Ohio.

7.      Upon information and belief, Defendant Summit Brokerage Services, Inc. ("SBS") is a Florida corporation, which maintains its principal place of business in Boca Raton, Florida.

8.      Upon information and belief, Defendant Cetera Financial Specialists LLC ("CFS") is a Delaware limited liability company.  Further, upon information and belief, no member of CFS is a citizen of Ohio.

9.     Upon information and belief, Defendant Oppenheimer & Co., Inc. ("OCI") is a New York corporation with its principal place of business in New York, New York.

10.    Upon information and belief, Defendant Oppenheimer Life Agency, Ltd. ("OLA") is a New York corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the value of $75,000, exclusive of interest and costs, and is between citizens of different states.  Specifically, in certain underlying arbitration statements of claim discussed herein, certain Defendants have alleged that "millions of dollars" are at stake.

12.    Personal jurisdiction exists and venue is also conferred under 28 U.S.C. § 1391(a) inasmuch as, among other things:  (1) Plaintiffs executed the contracts at issue in this case within the Southern District of Ohio; (2) Defendants submitted relevant paperwork, funds, and annuity contract application paperwork to one or more Plaintiffs within the Southern District of Ohio; (3) Plaintiffs issued and/or distributed pertinent individual variable annuity contracts out of the Southern District of Ohio; and (4) at least some of the conduct giving rise to certain Defendants' breaches addressed below occurred within the Southern District of Ohio.

## FACTUAL BACKGROUND

13.    Via this action, Plaintiffs seek declaratory relief:  (1) finding that Defendants CAN, FAS, and SBS have materially breached the terms of "selling agreements" they executed with Plaintiffs; (2) that CAN, FAS, CIS, and CA have no right, contractual or otherwise, to compel Plaintiffs ONLIC or ONLAC to arbitrate any disputes relating to such selling agreements before FINRA; and (3) that neither the Cetera Defendants nor the Oppenheimer Defendants are

3

entitled to receive any trail commissions on ONLIC individual annuity products they sold pursuant to the respective selling agreements, following the termination of such agreements. Plaintiffs also seek preliminary and permanent injunctive relief enjoining CAN, FAS, CIS, and CA from continuing to pursue FINRA arbitration actions against ONLIC and ONLAC.

> A.      **The Selling Agreements Between Plaintiffs And Defendants.**

14. The backdrop for this action consists of various agreements executed between the parties to this case. The agreements at issue specifically relate to the promotion and sale of individual variable annuity products offered and issued by ONLIC, but frequently marketed and sold by third-party broker-dealers, like each of the Defendants (with the exception of OLA, which was nonetheless a party to a selling agreement). The specific product at issue is a line of ONcore individual variable annuity products previously sold by ONLIC (the "ONcore Variable Annuities").

15. The agreements at issue, known as "selling agreements," authorized the contracting third-party broker-dealers to sell the ONcore Variable Annuities. Such agreements included Schedules of Commissions (incorporated as part of the agreements) that, among other things, reflected that commission payments would be made directly to the contracting broker-dealers. One commission option provided for the ONcore Variable Annuities was the payment of so-called "trail" commissions over time. However, by its express terms, the pertinent Schedule of Commissions for each Selling Agreement, applicable to the ONcore Variable Annuities made clear that trail commissions would continue to be paid to the contracting broker-dealers only so long as *both* of the following were satisfied: the pertinent Selling Agreements remain in force, *and* the individual annuity contracts were not surrendered or annuitized. In

other words, the termination of a Selling Agreement also terminated any obligation of Plaintiffs' to continue paying trail commissions as to the ONcore Variable Annuities.

16. Notably, although non-party Ohio National Equities, Inc. was also a party to the pertinent Selling Agreements, for regulatory reasons, the ONcore Variable Annuities were sold *by ONLIC*. The premiums paid for purchase of such annuities went *to ONLIC*. And, commissions owed to broker-dealers based on the ONcore Annuities, pursuant to the terms of the Selling Agreements, were paid *by ONLIC*.

17. Each of the Defendants, either themselves or via predecessors, is a party to one or more Selling Agreements, which included ONcore Variable Annuities commission schedules, with Plaintiffs.

18. Financial Network Investment Corporation, a predecessor to Defendant CAN, executed such a Selling Agreement with Plaintiffs, in or about 1999. A true and accurate copy of this Selling Agreement, with addenda and supplements, is attached as Exhibit A. Walnut Street Securities, Inc., upon information and belief, another predecessor to Defendant CAN, executed such a Selling Agreement with Plaintiffs, in or about August 1999. A true and accurate copy of this Selling Agreement, with addenda and supplements, is attached as Exhibit B. Girard Securities, Inc., upon information and belief another predecessor to Defendant CAN, executed such a Selling Agreement with Plaintiffs, in or about April 2006. A true and accurate copy of this Selling Agreement, with addenda and supplements, is attached as Exhibit C.

19. Defendant FAS, executed such a Selling Agreement with Plaintiffs, in or about November 2000. A true and accurate copy of this Selling Agreement, with addenda and supplements, is attached as Exhibit D.

20. PrimeVest Financial Services, a predecessor to Defendant CIS, executed such a Selling Agreement with Plaintiffs, in or about March 2004. A true and accurate copy of this Selling Agreement, with addenda and supplements, is attached as Exhibit E.

21. Multi-Financial, a predecessor to Defendant CA, executed such a Selling Agreement with Plaintiffs, in or about October 1988. Investors Capital Corporation, upon information and belief another predecessor to Defendant CA, executed such a Selling Agreement with Plaintiffs, in or about May 1998. True and accurate copies of these Selling Agreements, with addenda and supplements, are attached as Exhibits F and G.

22. Defendant SBS executed such a Selling Agreement with Plaintiffs, in or about June 2003. A true and accurate copy of this Selling Agreement, with addenda and supplements, is attached as Exhibit H.

23. Genworth Financial Securities Corporation, upon information and belief a predecessor to Defendant CFS, executed such a Selling Agreement with Plaintiffs, in or about April 2012. A true and accurate copy of this Selling Agreement, with addenda and supplements, is attached as Exhibit I.

24. Defendants OCI and OLA executed such a Selling Agreement with Plaintiffs, in or about July 2003. A true and accurate copy of this Selling Agreement, with addenda and supplements, is attached as Exhibit J.

25. Each of the Selling Agreements with the Cetera Defendants contained a "General Conduct of BD" provision with language substantially similar to the following:

> BD expressly agrees that neither it nor its Representatives will: induce agents to leave ONL; engage in any course of conduct to systematically replace Contracts issued by ONL; or recommend or cause the surrender of cash values of the Contracts to purchase or exchange for insurance policies or annuities issued by other insurance companies, unless such action is in the best interests of

the Contract Owner; or otherwise do anything prejudicial to ONL's interests or that of its Contract Owners. This provision will continue in force after the termination of this Agreement.

[Selling Agreements § 23.]

26.     Each pertinent Selling Agreement also contains a "Termination" provision with language substantially similar to the following:

This Agreement may be terminated at the option of any party upon sixty (60) days written notice to the other parties, or without notice at the option of any party hereto upon a material breach by any party of the covenants and terms of this Agreement.

[Id. § 20.]

**B.      CAN, FAS, And SBS Materially Breach The Selling Agreements.**

27.     At all relevant times, Plaintiffs have complied with the terms of the Selling Agreements. As they were contractually entitled to do under the Selling Agreements, Plaintiffs in or about September 2018 provided various parties, including each of the Defendants, with more than 60-days advance notice of their intent to terminate the pertinent ONcore-related selling agreements effective December 12, 2018.

28.     At approximately the same time, Plaintiffs proposed to enter into servicing agreements with Defendants which would allow for Defendants' continued servicing of previously-sold contracts, and the payment of servicing fees equivalent to commissions that would have been payable but for the termination of the Selling Agreements, with the exception that no such fees would be paid as to certain ONcore Variable Annuities with a Guaranteed Minimum Income Benefit ("GMIB") rider.

29.     Nonetheless, through this process, Plaintiffs have made clear that no ONcore Variable Annuity contract owners (i.e., customers) will be required to give up their chosen product. Likewise, Plaintiffs have committed to continue providing customers with the same

7

services for which they contracted, following termination of the Selling Agreements. Defendants, like a number of other broker-dealers, have expressed displeasure with Plaintiffs' decision to exercise their express contractual rights.

30.    However, Plaintiffs have discovered that certain of the Cetera Defendants have taken their displeasure to a new level by engaging in a course of conduct prejudicial to Plaintiffs' interests—in direct violation of the terms of the Selling Agreements quoted above.

31.    Since Plaintiffs issued their original notice of termination of the Selling Agreements, Plaintiffs have received five complaints filed with multiple state departments of insurance by customers affiliated with Defendants CAN, FAS, and SBS (the "Customer Complaints"). The principal elements of each Customer Complaint are the same and are predicated upon the following false assertions or statements:

- That Plaintiffs intend to terminate the customer's annuity contract, including the GMIB Rider, that he or she had purchased with the contract.

- That Plaintiffs have terminated the advisor's ability to service the customer or "fired" the customer's financial advisor.

- That the customer's advisor will no longer have access to his or her contract information.

- That Plaintiffs made the customer an offer to buy out his or her contract in the last year. (False in two CAN complaints)

- That Plaintiffs have committed elder abuse. (Included in one FAS complaint)

- That the customer will no longer receive the financial advisory services that the customer paid for and will continue to pay for in annual contract fees and charges.

32.    Such contentions are false. The first five items enumerated above are facially false. The alleged events never occurred. The last item is predicated upon the false premise that

the customer pays for and will continue to pay for financial advisory services that he or she will allegedly not receive. There is no such language in the Selling Agreements or product prospectuses that provide for this type of arrangement. Simply put, there are no costs deducted from customers' purchase payments and no annual contract fees or charges paid by Plaintiffs' customers for financial advisory services or for commissions paid to broker dealers who sell ONLIC products.

33.     Further, it is clear that the Customer Complaints were orchestrated either by CAN, FAS, SBS, and their affiliates, agents, or both.   The dissemination of such false statements, at minimum, casts Plaintiffs in a false light and interferes with their contractual relationships with their customers—all of which CAN, FAS, and SBS intended to prejudice Plaintiffs.

34.     Having learned of such actions, Plaintiffs sent letters to each of CAN, FAS, and SBS on or about December 10, 2018, and notified them that such conduct amounted to a material breach of Section 23 of the Selling Agreements that authorized immediate termination of their respective Selling Agreements, under Section 20.   True and accurate copies of these letters are attached as Exhibit K.  Via such letters, Plaintiffs advised CAN, FAS, and SBS that, due to their material breaches, the offer of entering into servicing agreements was no longer on the table; that the Selling Agreements were terminated immediately; and that all compensation being paid under the Selling Agreements would cease immediately.

35.     Nonetheless, Plaintiffs also indicated their intent to provide CAN, FAS, and SBS with a servicing letter pursuant to which such entities and their registered representatives may still continue to service customers with ONLIC contracts and continue to have access to customer information about the same.

36.     CAN, FAS, and SBS disagree with Plaintiffs' position and Plaintiffs' immediate termination of the respective Selling Agreements for cause under Section 20, and the resulting cessation of the payment of any compensation under such agreements.  Thus, a dispute exists between the parties to these pertinent Selling Agreements as to the status thereof, including the effectiveness of Plaintiffs' immediate termination of such agreements based on the material breaches by CAN, FAS, and SBS.

### C.     Certain Cetera Defendants' Improper Efforts To Pursue FINRA Arbitration Against ONLIC and ONLAC Absent An Enforceable Agreement Requiring The Same.

37.     Separately, four Cetera entities – including three that, as described above, have materially breached the pertinent Selling Agreements, have initiated FINRA arbitration proceedings against, *inter alia*, ONLIC and ONLAC.  They have done so even though ONLIC and ONLAC are neither broker-dealers nor FINRA members.

38.     Specifically, CAN and FAS, have filed a FINRA action captioned Cetera Advisors Networks, LLC and First Allied Securities, Inc., v. The O.N. Equity Sales Company, et al., FINRA Case No. 18-3987 (the "First FINRA Action").

39.     In addition, CIS and CA have filed a separate FINRA action captioned Cetera Investment Services LLC, et al. v. Ohio National Equities, Inc., et al., FINRA Case No. 18-3990 (the "Second FINRA Action").

40.     Collectively, the four Cetera-affiliated claimants in the two FINRA Actions are described as the FINRA Claimants.

41.     In both the First and Second FINRA Actions, the FINRA Claimants seek relief against both ONLIC and ONLAC based on various theories relating to Selling Agreements that facilitated the sale of ONcore Variable Annuities previously offered by ONLIC.

42. The FINRA Claimants assert a right to arbitrate their claims against ONLIC and ONLAC based on language in purported contractual arbitration provisions and under FINRA Rules. But, there are multiple problems with the FINRA Claimants' assertions, which preclude them from requiring either ONLIC or ONLAC to participate in FINRA arbitration.

1. **No Written Arbitration Agreement Covers The Dispute At Issue.**

43. The first problem is that, at least in the First FINRA Action, the alleged contractual arbitration provision upon which the FINRA Claimants purport to rely has nothing to do with the ONcore Variable Annuity products at issue. Specifically, Claimants in the First FINRA Action, CAN and FAS, assert a contractual right to arbitration solely based on language in "distribution" agreements their predecessors executed with non-party The O.N. Equity Sales Company ("ONESCO") and certain other Ohio National Entities that pertained to the sale of *other products not in dispute*. In other words, that Agreement related to wholly different products that have *nothing to do with the ONcore Variable Annuities* that are at the heart of the parties' instant dispute. Thus, the arbitration provision contained therein is not applicable and/or properly invoked against any parties thereto.

44. In both FINRA Actions, the pertinent Selling Agreements, which contain the at-issue ONcore Variable Annuity commission schedules, *do not contain any type of arbitration provision*. Thus, *as to the actual matters in dispute* (as framed by the FINRA Claimants' own allegations), there is no written agreement to arbitrate between any of the FINRA Claimants and ONLIC or ONLAC. Further, in any event, even if the cited provision applied, it does not impose a binding obligation on Plaintiffs to arbitrate any claims with Defendants, inasmuch as such provision merely provided for arbitration under FINRA rules—rules that, as discussed below, do not (and cannot be invoked to) require Plaintiffs to arbitrate before FINRA.

### 2. FINRA Lacks Jurisdiction Over ONLIC and ONLAC, Which Are Not FINRA Members.

45.     The second problem is that, even assuming *arguendo* ONLIC and ONLAC had signed agreements *pertinent to the instant dispute* that called for arbitration under FINRA rules, such entities – as *non-FINRA members* – could not and cannot be compelled to arbitrate before FINRA.

46.     That is because the rules contained in FINRA's arbitration code for industry disputes do not contemplate arbitration involving non-members, like ONLIC and ONLAC. Thus, FINRA lacks arbitration jurisdiction over them.

47.     To be sure, former NASD (n/k/a FINRA) rules previously contemplated arbitration by "certain others," who may not have been FINRA members.  But, current FINRA Rule 13200 (which has been in effect at all relevant times) makes clear that only FINRA member entities and FINRA-registered representatives (i.e., "associated persons") may be compelled to resolve their disputes via FINRA arbitration.  The following comparison of the former and current industry arbitration rules makes this clear:

| **Former NASD Rule 10201(a)** | **FINRA Rule 13200(a) Currently In Effect** |
|---|---|
| 10201.        Required Submission<br><br>(a) Except as provided in paragraph (b) or Rule 10216 [both of which relate to statutory discrimination claims], a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, ***and/or certain others***, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code, at the instance of: (1) a member against another member; (2) a member against a person associated with a member or a person associated with a member against a member; and (3) a person associated with a member against a person associated with a member. | 13200.        Required Arbitration<br><br>(a)        Generally<br><br>    Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute *arises out of the business activities of a member* or an associated person and is ***between or among***:<br><br>• *Members;*<br><br>• *Members and Associated Persons; or*<br><br>• *Associated Persons.*<br><br>    [Emphasis added.] |

48.    The fact that FINRA's industry code does not contemplate arbitration by non-FINRA members is reinforced by the language of FINRA's *current* customer code (which applies to disputes brought by investors).  The customer code, FINRA Rule 12201, contains a provision providing for "elective arbitration" that may encompass "related part[ies]":

**Rule 12201. Elective Arbitration**

"Parties may arbitrate a dispute under the Code if:

• The parties *agree in writing* to submit the dispute to arbitration under the Code after the dispute arises; and

• The dispute is between a customer and a member, associated person of a member, ***or other related party***; and

• The dispute arises in connection with the business activities of a member or an associated person, except disputes involving the

insurance business activities of a member that is also an insurance company."

[Emphasis added.]

49. No similar language is found in the industry code, which applies to the dispute at issue here. Moreover, even in the context of customer/investor disputes, FINRA has issued guidance indicating that it will exercise non-member jurisdiction as to SEC-registered investment advisers ("IA"); but even then, only when both the IA and investor execute a *post-dispute*, written agreement to arbitrate before FINRA and a *post-dispute* submission agreement, in a form acceptable to FINRA. See Guidance on Disputes between Investors and Investment Advisors that are Not FINRA Members, available at https://www.finra.org/arbitration-and-mediation/investment_advisers. A true and accurate copy of such Guidance is attached as Exhibit L.

50. As a result, even if they had executed an agreement to arbitrate the present disputes with the FINRA Claimants under FINRA rules, ONLIC and ONLAC cannot be compelled to arbitrate before FINRA due to FINRA's lack of jurisdiction; and they do not agree to do so.

51. The same reasoning applies to the other Cetera Defendants, as well.

## COUNT I

**(Declaratory Relief As To Material Breach of Selling Agreements By Defendants CAN, FAS, and SBS)**

52. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully rewritten herein.

53. Plaintiffs contend that Defendants CAN, FAS, and SBS have materially breached their pertinent Selling Agreements with Plaintiffs by, *inter alia*, orchestrating the submission of

materially false and/or misleading customer complaints to various regulators. Such breach entitled Plaintiffs to immediately terminate such Selling Agreements, and to immediately cease paying CAN, FAS, and SBS any compensation under the same. CAN, FAS, and SBS dispute Plaintiffs' position and assert that they should continue to be paid compensation under the Selling Agreements.

54. Declaratory relief from this Court will resolve these controversies and limit the uncertainties.

55. As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, duties, and liabilities of the parties. Plaintiffs, therefore, request declaratory judgment from this Court pursuant to Rule 57 of the Federal Rules of Civil Procedure that (a) Defendants CAN, FAS, and SBS materially breached the Selling Agreements at issue; and (b) Plaintiffs' immediate termination of such agreements (including termination of compensation) was effective and consistent with the terms of the pertinent Selling Agreements.

## COUNT II

### (Declaratory Relief As To Non-Arbitrability Of FINRA Claimants' Claims Against Plaintiffs)

56. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully rewritten herein.

57. No form of written arbitration agreement exists between ONLIC, ONLAC, and the FINRA Claimants with respect to the matters at issue with the First and Second FINRA Actions.

58. In addition, neither ONLIC nor ONLAC have any obligation to arbitrate any disputes with the FINRA Claimants under FINRA rules.

15

59. The FINRA Claimants dispute Plaintiffs' position, and seek to force ONLIC and ONLAC to arbitrate the FINRA Claimants' claims as part of the First and Second FINRA Arbitrations.

60. As a result, a dispute exists as to arbitrability, which is an issue to be resolved by the Court.

61. Declaratory relief from this Court will resolve these controversies and limit the uncertainties.

62. As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, duties, and liabilities of the parties. Plaintiffs, therefore, request declaratory judgment from this Court pursuant to Rule 57 of the Federal Rules of Civil Procedure that (a) Plaintiffs have no obligation to arbitrate the claims asserted against them in the First and Second FINRA Actions; and (b) Plaintiffs have no obligation to arbitrate any claims regarding or relating in any way to the Selling Agreements and/or the ONcore Variable Annuities.

## COUNT III

**(Declaratory Relief As To Termination Of Trail Commission Payment Obligation As To All Defendants)**

63. Plaintiffs reallege and incorporate the foregoing paragraphs as if fully rewritten herein.

64. Pursuant to the express terms of the ONcore commission schedule incorporated as part of Plaintiffs' Selling Agreements with each Defendant, Plaintiffs' obligation to pay trail commissions as to ONcore Variable Annuities ceased upon termination of the Selling Agreements. Plaintiffs properly and effectively terminated the Selling Agreements as of December 12, 2018 (and earlier in the case of CAN, FAS, and SBS). Thus, Plaintiffs' obligation to continue paying such trail commissions ceased no later than that day.

65.     Defendants, however, dispute Plaintiffs' position and contend that Plaintiffs continue to have an obligation to pay trail commissions to them with respect to the ONcore Variable Annuities.

66.     As a result, a justiciable dispute exists as to the parties' respective rights and obligations.

67.     Declaratory relief from this Court will resolve these controversies and limit the uncertainties.

68.     As alleged herein, a real, substantial and immediate controversy is presented regarding the rights, duties, and liabilities of the parties under the Selling Agreements. Plaintiffs, therefore, request declaratory judgment from this Court pursuant to Rule 57 of the Federal Rules of Civil Procedure that the termination of the Selling Agreements with each Defendant (including CAN, FAS, and SBS to the extent they are not found to have been in material breach), also terminated Plaintiffs' obligation to continuing paying trail commissions with respect to any ONcore Variable Annuities.

## COUNT IV

### (Injunctive Relief)

69.     Plaintiffs reallege and incorporate the foregoing paragraphs as if fully rewritten herein.

70.     Plaintiffs will be irreparably harmed if compelled to arbitrate claims for which they have no contractual obligation to do so.

71.     Plaintiffs thus seek preliminary and permanent injunctive relief (1) enjoining the FINRA Claimants from further proceedings in the First and Section FINRA Actions against Plaintiffs; and (2) enjoining the Cetera Defendants from filing any arbitration claims before the

Financial Industry Regulatory Authority against Plaintiffs regarding or relating in any way to the Selling Agreements and/or the ONcore Variable Annuities.

WHEREFORE, Plaintiffs respectfully request relief as follows:

(1)     A declaration, pursuant to Rule 57 of the Federal Rules of Civil Procedure, that (a) Defendants CAN, FAS, and SBS materially breached the Selling Agreements at issue; and (b) Plaintiffs' immediate termination of such agreements (including termination of compensation) was effective and consistent with the terms of the pertinent Selling Agreements.

(2)     A declaration, pursuant to Rule 57 of the Federal Rules of Civil Procedure, that (a) Plaintiffs have no obligation to arbitrate the claims asserted against them in the First and Second FINRA Actions; and (b) Plaintiffs have no obligation to arbitrate any claims regarding or relating in any way to the Selling Agreements and/or the ONcore Variable Annuities.

(3)     A declaration, pursuant to Rule 57 of the Federal Rules of Civil Procedure, that the termination of the Selling Agreements with each Defendant (including CAN, FAS, and SBS to the extent they are not found to have been in material breach), as of December 12, 2018, also terminated Plaintiffs' obligation to continuing paying trail commissions with respect to any ONcore Variable Annuities

(4)     Preliminary and permanent injunctive relief (1) enjoining the FINRA Claimants from further proceedings in the First and Section FINRA Actions against Plaintiffs; and (2) enjoining the Cetera Defendants from filing any arbitration claims before the Financial Industry Regulatory Authority against Plaintiffs regarding or relating in any way to the Selling Agreements and/or the ONcore Variable Annuities.

(c)     Any and all other relief that this Court may deem appropriate.

Respectfully submitted,

/s/ Marion H. Little, Jr.
Marion H. Little, Jr.    (0042679)
Trial Attorney
Christopher J. Hogan   (0079829)
ZEIGER, TIGGES & LITTLE LLP
3500 Huntington Center
41 South High Street
Columbus, Ohio  43215
(614) 365-9900
(Fax) (614) 365-7900
little@litohio.com
hogan@litohio.com

Attorneys for Plaintiffs

414-033:793007

19